1  Gautam Dutta, Esq. (State Bar No. 199326)
   BUSINESS, ENERGY, AND ELECTION LAW, PC
2  5655 Silver Creek Valley Rd. # 900
   San Jose, CA  95138
3  Telephone:  415.236.2048
   Email:  Dutta@BusinessandElectionLaw.com
4  Fax:  213.405.2416

5  Attorneys for Plaintiff

6  MIKE HONDA FOR CONGRESS

7

8            IN THE UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  MIKE HONDA FOR CONGRESS,                    CASE NO.

12  an unincorporated political association,

13            *Plaintiff*,                      **NOTICE OF MOTION AND MOTION
                                                FOR PRELIMINARY INJUNCTION;**
14            vs.                               **POINTS AND AUTHORITIES**

15  BRIAN PARVIZSHAHI, an individual,           HEARING DATE:  TBD
                                                HEARING TIME:  TBD
16  RO FOR CONGRESS, INC.,                      JUDGE:  TBD
                                                COURTROOM: TBD
17  a California corporation,

18  ROHIT "RO" KHANNA, an individual,

19  and DOES 1 through 10,

20            *Defendants*.

21

22

23

24

25

26

27

28

NOTICE OF MOTION

TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD:

*Please take notice* that, as soon as this matter may be heard before the assigned judge in the United States District Court for the District of Northern California, San Jose Division, located at 280 South First Street, San Jose, California  95113, Plaintiff Mike Honda for Congress will move this Court to issue a *preliminary injunction* (1) enjoining Defendant Brian Parvizshahi, Defendant Ro for Congress, Inc., and Defendant Rohit "Ro" Khanna from violating, and continuing to violate, the Computer Fraud and Abuse Act  ("CFAA", 18 U.S.C. §1030); (2) enjoining Defendant Parvizshahi, Defendant Ro for Congress, Inc., and Defendant Khanna from continuing to use Mike Honda for Congress' confidential and proprietary information that they have illegally obtained in violation of the CFAA, and (3) ordering Defendant Brian Parvizshahi, Defendant Ro for Congress, Inc., and Defendant Rohit "Ro" Khanna to promptly disgorge and destroy all confidential and proprietary information that they have illegally obtained in violation of the CFAA.

Plaintiff's Motion is based on this Notice of Motion and Motion, along with the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and the Declarations of Garnetta Annable, Michael Beckendorf, Judy Bertelsen, Robert Eberhardt, Kalyn Free, Fayzan Gowani, Hon. Robert "Bob" Hasegawa, Hon. Michael "Mike" M. Honda, Madalene Xuan-Trang Mielke, Dale Minami, Gautam Dutta, Bill O'Day, and Alison Woodworth.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

1    DATED:  Sept. 22, 2016

2

3                                                Respectfully submitted,

4

5                                                By:  /s/ Gautam Dutta
                                                      GAUTAM DUTTA, ESQ.

6                                                Attorneys for Plaintiff

7                                                MIKE HONDA FOR CONGRESS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR
                                                   PRELIMINARY INJUNCTION

1

## <u>TABLE OF CONTENTS</u>

2   **I.**    Notice of Motion                                    2

3   **II.**   Introduction                                        5

4   **III.**  Background                                          5

5   **IV.**   Factual Background                                  6

6   **IV.**   Legal Analysis                                     18

7   **V.**    Conclusion                                         26

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.     Introduction**

3

Unless the Court grants this Motion, Mike Honda for Congress will suffer irreparable

4

harm – and the privacy of *thousands* of supporters of U.S. Rep. Mike Honda will continue to be

5

violated – because Defendants Brian Parvizshahi, Ro for Congress, Inc., and Rohit "Ro" Khanna

6

have illegally seized, used, and abused confidential, proprietary information belonging to Mike

7

Honda for Congress.  In so doing, Defendants violated, *inter alia*, the Computer Fraud and Abuse

8

Act ("CFAA", 18 U.S.C. §1030).

9

Time is of the essence.  The Nov. 8, 2016 election between Rep. Honda and Defendant

10

Khanna will be held in a matter of weeks.  To date, confidential, proprietary information

11

belonging to Mike Honda for Congress has been illegally released.  Equally troubling, potentially

12

thousands of supporters of Mike Honda for Congress have been personally pressured and

13

intimidated by Defendant Khanna at a place that they had least expected:  their own email inbox.

14

The illegal data breach perpetrated by Defendants has already personally embarrassed

15

Rep. Honda, compromised his relationship with supporters, and harmed his reputation.  Unless

16

this Court swiftly intercedes, Mike Honda for Congress and thousands of Rep. Honda's

17

supporters will continue to suffer irreparable harm.

18

**II.    Procedural Background**

19

A.     <u>The Parties</u>

20

Plaintiff **Mike Honda for Congress** is an unincorporated political association with its

21

principal place of business in Santa Clara County, California.

22

Defendant **Brian Parvizshahi** works from a place of business located in Santa Clara

23

County, California.

24

Defendant **Ro for Congress, Inc.,** a California corporation that was incorporated in 2011,

25

conducts business from and maintains an office in Santa Clara County, California.

26

Defendant **Rohit "Ro" Khanna** is a resident of Alameda County, and works from a place

27

28

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

1    of business located in Santa Clara County.[1]

2          B.    Jurisdiction and Venue

3          This action arises under 18 U.S.C. §1030 and 18 U.S.C. §§1832, *et seq.* in relation to

4    Defendants' unlawful actions.  Accordingly, this Court has federal-question jurisdiction under 28

5    U.S.C. §1331 and 28 U.S.C. §1343.

6          All or most of the practices, events, and omissions alleged in this Complaint occurred in

7    Santa Clara County.  Accordingly, venue is appropriate for the U.S. District Court for the

8    Northern District of California, San Jose Division, pursuant to 28 U.S.C. §1391(b)-(c).

9    **III.**    **Factual Background**

10         A.    The Race for California's 17th Congressional District

11         Rep. Mike Honda represents California's 17th Congressional District, an area that

12    comprises a core part of Silicon Valley:  Cupertino, Sunnyvale, Santa Clara, Milpitas, Newark,

13    and parts of San Jose and Fremont.[2]

14         In 2004, Defendant Khanna unsuccessfully ran for the U.S. House of Representatives

15    against the late Congressmember Tom Lantos, who represented San Mateo County and a part of

16    San Francisco County.  In 2014, Defendant Khanna unsuccessfully challenged Congressmember

17    Honda for his current seat.  Because they were the top two finishers in California's June 7, 2016

18    "Top Two" Primary, Congressmember Honda and Defendant Khanna advanced to the looming

19    Nov. 8, 2016 general election.[3]

20         Defendant Parvizshahi joined Defendant Ro for Congress, Inc. as Data Director in January

21    2014, and was promoted to Campaign Manager the following year.[4]

22         B.    Defendant Parvizshahi's Brief Internship with Mike Honda for Congress'

23             Consultant

24         On April 25, 2005, Mike Honda for Congress and Madalene Mielke entered into an

---

[1]    Dutta Decl. ¶¶3-6.

[2]    Beckendorf Decl. ¶1.

[3]    Beckendorf Decl. ¶¶5-7.

[4]    Beckendorf Decl. ¶8 & Exh. 2.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

agreement (the "Agreement"), whereby Ms. Mielke became the fundraising consultant to Mike Honda for Congress.[5]  Pursuant to the Agreement (art. VI), Mike Honda for Congress solely or jointly owned all information (including fundraising and donor information) developed during the term of the Agreement.  All such information was deemed "confidential" and was required to be held "in absolute confidence".[6]

Subsequently, Ms. Mielke founded Arum Group, LLC.  After Arum Group was incorporated, Ms. Mielke's role as fundraising consultant under the Agreement was transferred to Arum Group.[7]  Pursuant to the terms of the Agreement, Arum Group served as fundraising consultant to Mike Honda for Congress until December 2014.[8]

Defendant Parvizshahi began what was intended to be his summer-long internship at Arum Group in May 2012.[9]  Like other Arum Group interns, Mr. Parvizshahi was required to sign an Internship Agreement, which contained a non-disclosure agreement (NDA) with respect to Arum Group's confidential, client information.[10]  In relevant part, the Internship Agreement stated:

> 1. You agree that you will not in any way discuss information obtained in connection with your position with the Arum Group outside of the Arum Group's clients.
>
> 2. You will treat any confidential or non-public information provided to you by the Arum Group as *strictly confidential*.  Any dissemination or discussion regarding such confidential information is *prohibited* with anyone outside of the Arum Group, unless permission to disseminate or discuss such information is granted.  This confidentiality requirement *shall survive the termination of this agreement*.[11]

Defendant Parvizshahi was given access to some of Arum Group's confidential client information, including confidential, proprietary information belonging to Mike Honda for

---

[5]     Mielke Decl. ¶7.

[6]     Mielke Decl. ¶7.

[7]     Mielke Decl. ¶10.

[8]     Mielke Decl. ¶11.

[9]     Woodworth Decl. ¶21.

[10]    Mielke Decl. ¶¶17, 27-29.

[11]    Mielke Decl. ¶20 & Exh. 1 (italics added).

1   Congress.[12]

2       C.    <u>Defendant Parvizshahi Gains Dropbox Access to Mike Honda for Congress'</u>

3           <u>Confidential, Proprietary Information</u>

4       Dropbox is a cloud (online) storage service that is frequently used for sharing and

5   synchronizing files.[13]  Arum Group shared access of certain files within Arum Group's Dropbox

6   account by sending an "invitation" to the personal (i.e., non-Arum Group) email address

7   of every intern, including that of Defendant Parvizshahi.[14]

8       Defendant Parvizshahi was given access to two Dropbox folders: (1) an Intern folder, and

9   (2) a folder containing fundraising information relating to Mike Honda for Congress (hereinafter,

10   the "Honda Folders").[15]  During his internship, Mr. Parvizshahi disliked performing what he

11   deemed to be menial tasks.[16]

12       On June 8, 2012, Defendant Parvizshahi abruptly resigned from his internship.  After his

13   last day at Arum Group, Mr. Parvizshahi's access to Arum Group's Dropbox account was

14   inadvertently not withdrawn.[17]  Arum Group continued to serve as the fundraising consultant for

15   Mike Honda for Congress until December 2014.

16       D.    <u>The Uniqueness of Each Dropbox Account</u>

17       A Dropbox account is created using at least the following pair:  a person's "username"

18   and password.[18]  This access granted to the person using that username is unique.[19]  For example,

19   suppose that one Dropbox account is created and then deleted, and later a second account is

20   created with the *same* username.  In that scenario, the access to the shared data of the first account

21

22   _____

23   [12]    Woodworth Decl. ¶¶13, 20.

    [13]    O'Day Decl. ¶7.

24   [14]    Woodworth Decl. ¶19.

25   [15]    Woodworth Decl. ¶20.

    [16]    Woodworth Decl. ¶23.

26   [17]    Woodworth Decl. ¶25.

27   [18]    O'Day Decl. ¶11.

    [19]    O'Day Decl. ¶12.

28

would *not* be accessible to the second account.[20]

Each Dropbox account has the ability to tie the account to an arbitrary number of computers.[21]  Each computer would have an alias (nickname) assigned to it.  Data on Dropbox is shared by means of "user permissions".  For example, if user1@example.com authorizes access to a shared folder (titled "SHARES") to user2@example.com, user2 would be able to access all files in SHARES from all devices until that access is withdrawn by user1.[22]

Dropbox's "Acceptable Use Policy" prohibits users from "violat[ing] the law in any way", or "even try[ing] to … violate the privacy or infringe the rights of others."[23]

E.      Sharing Information on Dropbox:  "Edited", "Removed", and "Added"

In a shared Dropbox folder, all authorized users are granted access as "permissioned" (generally, read-only access or full access).[24]  Any change to a file is recorded on Dropbox as "In <Shared Folder Name>, <user> <action> <filename>."[25]

There are three main types of "actions" that can be made to a Dropbox file.[26]  A file can be "edited", "removed", or "added".  An "edited" action means that the file had a new (updated) version of itself uploaded to the shared location within the Dropbox account.  "Edited" often means that the file was *last* viewed by a user at the time the "edited" action was recorded on Dropbox.[27]

Notably, just because a file has been edited does not necessarily mean that the *content* of the file has changed.  Many files have additional "metadata" stored in them:  information keeping track of edits, summary information, view information, and other information relating to the state

_____

[20]    O'Day Decl. ¶13.

[21]    O'Day Decl. ¶14.

[22]    O'Day Decl. ¶15.

[23]    *See* https://www.dropbox.com/privacy#acceptable_use (last visited Sept. 20, 2016).

[24]    O'Day Decl. ¶16.

[25]    O'Day Decl. ¶17.

[26]    O'Day Decl. ¶18.

[27]    O'Day Decl. ¶19.

of a document outside of the content itself.[28]  Such metadata are therefore much more volatile. For example, changing a Word document from "Print" view to "Draft" view would constitute a change in state and would be saved and recorded on Dropbox *even if* nothing else occurred.[29]

A file that was "edited" *was definitely opened by the Dropbox user*.  More could have been done to the file; but the "edited" marker indicates, at a bare minimum, that the file was opened.[30]

A "removed" action means that the file was removed from the shared location within the Dropbox account.[31]

An "added" action means that a new file was added to the shared location within the Dropbox account.[32]  From a forensic standpoint, Dropbox files labeled as "added" are the most interesting, for those files are the ones with which that person making the change spent the most time.[33]

If a Dropbox file shows an action of "added" and that file had existed *before* the "added" action occurred, it means that the file was (a) removed from the shared location within the Dropbox account, and then (b) was *re*-added (i.e., was moved back) to the shared location within the Dropbox account.[34]  This scenario most often occurs when someone has *removed* the file to another location (e.g., his or her desktop) – and then *moved the file back* to the shared location within the Dropbox account.[35]

F.    Meaning of the "Desktop" Label in "Added" or "Edited" Actions

When Dropbox shows that a file has been "added" or "edited", a label of "Desktop" or "Website" appears on the same line.  That label ("Desktop" or "Website") shows the *source* of

---

[28]    O'Day Decl. ¶20.
[29]    O'Day Decl. ¶21.
[30]    O'Day Decl. ¶22.
[31]    O'Day Decl. ¶23.
[32]    O'Day Decl. ¶24.
[33]    O'Day Decl. ¶25.
[34]    O'Day Decl. ¶26.
[35]    O'Day Decl. ¶27.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

1    the action that was taken.[36]

2          If the label is "Desktop", hovering over this label will reveal the alias (nickname) of the

3    computer used to make the edits.[37]  If more than one alias is seen, it means that (1) more than one

4    computer was used to make the edits, and (2) the user had authorized a number of computers to

5    access both his or her personal Dropbox account and, by extension, any shared folders tied to that

6    account.[38]

7          G.      Defendant Parvizshahi Accesses Mike Honda for Congress' Confidential,

8                  Proprietary Data After Leaving His Internship With Mike Honda for Congress'

9                  Consultant

10          After leaving Arum Group, Defendant Parvizshahi continued to access the confidential,

11   proprietary data belonging to Mike Honda for Congress.  During the relevant period, Defendant

12   Parvizshahi accessed the Honda Folders from one of two computers:  one had the alias of

13   "BrianParvi-PC"; the other had the alias of "BrianParvi".[39]

14          Between Feb. 7, 2013 and Sept. 20, 2013, Mr. Parvizshahi "edited", "added", or in some

15   way modified the Honda Folders at least a total of seven times:  three times on Feb. 7, 2013, once

16   on Feb. 18, 2013, twice on June 23, 2013, and once on Sept. 20, 2013.[40]  True and accurate copies

17   of screenshots of each file that Mr. Parvizshahi "edited", "added" or in some way modified for

18   the period Feb. 7, 2013 through Sept. 20, 2013 have been reprinted in the accompanying

19   Declaration of Robert Eberhardt (¶18).

20          H.      Defendant Parvizshahi Accesses Mike Honda for Congress' Confidential,

21                  Proprietary Data Throughout His Employment with Defendant Ro for Congress,

22                  Inc.

23          After Jan. 2014 (when he began working for Defendant Ro for Congress, Inc.), Defendant

24   _____

25   [36]    O'Day Decl. ¶28.

26   [37]    O'Day Decl. ¶29.
     [38]    O'Day Decl. ¶30.

27   [39]    Eberhardt Decl. ¶16.

28   [40]    Eberhardt Decl. ¶17.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

Parvizshahi continuously accessed the Honda Folders.  Specifically, Defendant Parvizshahi "edited", "added", or in some way modified individual documents within the Honda Folders at least forty-four (44) times.[41]  Several documents were "edited", "added", or in some way modified more than once.[42]  True and accurate copies of screenshots of each file that Defendant Parvizshahi "edited", "added", or in some way modified for the period Jan. 1, 2014 through June 14, 2015 are reprinted in the accompanying Declaration of Robert Eberhardt (¶20).

On June 15, 2015, Defendant Parvizshahi "edited" the Honda Folders for the last time.[43] True and accurate copies of screenshots of each file that Defendant Parvizshahi "edited", "added", or in some way modified on June 15, 2015 are reprinted in the accompanying Declaration of Robert Eberhardt (¶22).

I.      Ro Khanna's Email Accosting of Mike Honda for Congress Supporters

Beginning Saturday, Oct. 3, 2015, sixteen individuals contacted Mike Honda for Congress to report that Defendant Khanna had accosted Mike Honda for Congress supporters by directly emailing them on Oct. 3, 2015.[44]  In each of those emails – which were sent in at least four batches at 3:10, 3:14, 3:15, and 3:17 pm PT – supporters were asked if they "might have time for a call" to discuss Defendant Khanna's race against Congressmember Honda.[45]

In each of those emails, Defendant Khanna further stated that "Honda's ethics scandal has convinced many voters about the need for change."[46]  Defendant Khanna's email also contained, under the heading of "Recent Press", links to a number of articles that were critical of Congressmember Honda.[47]

At the time, Honda for Congress did not know Mr. Khanna and his campaign had obtained the names and current email addresses of its donors.  Those items are the *lifeblood* of any

---

[41]      Eberhardt Decl. ¶19.
[42]      Eberhardt Decl. ¶19.
[43]      Eberhardt Decl. ¶21.
[44]      Beckendorf Decl. ¶10.
[45]      Hasegawa Decl. Exh. 2.
[46]      Hasegawa Decl. Exh. 2.
[47]      Hasegawa Decl. Exh. 2.

successful fundraising (and political) campaign.[48]

The sixteen individuals who contacted Honda for Congress regarding Mr. Khanna's email were likely the tip of the iceberg.  Namely, for every donor who contacted Honda for Congress, there likely were at least 50-100 donors who did *not* contact Honda for Congress.[49]

As of today, Honda for Congress has gathered Declarations from six supporters of Mike Honda for Congress regarding the emails that they received from Defendant Khanna on Oct. 3, 2015:  **Garnetta Annable, Judy Bertelsen, Kalyn Free** (who lives in Oklahoma), **Fayzan Gowani** (who has never resided in California's 17th Congressional District), **Washington State Senator Bob Hasegawa** (who lives in Washington State), and **Dale Minami.**[50]

Between 3:10 pm and 3:17 pm PT on Oct. 3, 2015, each of the six supporters received an identical, blind-carbon-copied email from Defendant Khanna.[51]  In fact, two of the supporters (Ms. Bertelsen and Ms. Free) received the email at the same time:  3:17 pm PT.[52]

Currently, one of the six supporters (Ms. Gowani) is not even listed in the Federal Election Commission's (FEC) donor records.[53]  Another supporter (Ms. Annable) was not listed in the FEC's donor records until May 28, 2016.[54]

J.   Defendant Khanna's Responses to Inquiries Regarding His Email Accosting of Mike Honda for Congress Supporters

After being accosted by Defendant Khanna, Ms. Gowani asked, *inter alia*, Defendant Khanna how he had obtained her contact information:  "Also, please explain *how* you found

---

[48]   Beckendorf Decl. ¶14.

[49]   Beckendorf Decl. ¶15.

[50]   Annable Decl. ¶6 & Exh. 1; Bertelsen Decl. ¶6 & Exh. 1; Free Decl. ¶9 & Exh. 2, Gowani Decl. Exh. 1, Hasegawa Decl. ¶9, and Minami Decl ¶8.

[51]   Annable Decl. ¶6 & Exh. 1; Bertelsen Decl. ¶6 & Exh. 1; Free Decl. ¶9 & Exh. 2, Gowani Decl. Exh. 1, Hasegawa Decl. ¶9, and Minami Decl ¶8.

[52]   Free Decl. ¶9 & Exh. 2; Bertelsen Decl. ¶6 & Exh. 1.

[53]   Eberhardt Decl. ¶¶31, 32.  Federal campaigns are required to report, to the Federal Election Commission, donations of more than $200 during an election cycle.  *See* 52 U.S.C. §30104(b)(3)(a); 11 C.F.R. §104.8(a).

[54]   Annable Decl. Exh. 2.

my email. *I have never and do not plan on voting or campaigning for you, nor have I ever resided in your district.*"[55]

In an email (sent from his iPhone) on which Defendant Brian Parvizshahi was copied (on his private, non-campaign email), Defendant Khanna answered in relevant part and asked Defendant Parvizshahi to "make sure" that Ms. Gowani had been removed from the "friends list":

> You were on a *friends list* as a prospect of someone who would find my campaign platform attractive as a next generation democrat. … I am sorry you were included on this list and we will take you off per your request.
>
> Brian, please make sure of that.[56]

After being accosted by Mr. Khanna, Ms. Bertelsen told Mr. Khanna that she strongly supported Congressmember Khanna.[57]  One hour later, Mr. Khanna emailed her a response. Among other things, he stated:  "I hope over the years I will be able to earn your trust."[58]

K.      The Anonymous Release of a Document Containing Confidential, Proprietary
        Information Belonging to Mike Honda for Congress

On Dec. 16, 2015, San Jose *Inside* published, online, a document containing confidential information of donors to Mike Honda for Congress.[59]  That document included the donors' names, preferred nicknames, employer information, personal telephone numbers, and preferred nicknames.[60]  According to *Inside*, that document had "arrived in the mail" from an anonymous source in early December 2015.[61]

L.      The Discovery of the Data Breach

On May 31, 2016, Randy Broz, the fundraising consultant for Mike Honda for Congress,

---

[55]     Gowani Decl. Exh. 1 (italics added).

[56]     Gowani Decl. Exh. 1 (italics added).

[57]     Bertelsen Decl. ¶10 & Exh. 1.

[58]     Bertelsen Decl. ¶11 & Exh. 1.

[59]     Beckendorf Decl. ¶16 & Exh. 4.

[60]     Beckendorf Decl. ¶16 & Exh. 4.

[61]     Beckendorf Decl. ¶17 & Exh. 4.

received a notification from Dropbox that files in the "Honda" folder had been modified.[62] In response, Sudip Dutta, then the Finance Director of Mike Honda for Congress, sent an email to Arum Group's Madalene Mielke, the previous fundraising consultant for Mike Honda for Congress, to inquire about those Dropbox files.[63]

Ms. Mielke sent an email to Mr. Dutta that same day.  In that email, Ms. Mielke stated that (1) Defendant Parvizshahi had previously been an intern for Arum Group, (2) Defendant Parvizshahi had not been previously removed from the Dropbox access list with respect to the files of Mike Honda for Congress, and (3) upon discovering that inadvertent oversight, she had removed Defendant Parvizshahi's name from the Dropbox access list.[64]

Subsequently, Michael Beckendorf, Campaign Manager of Mike Honda for Congress, requested access to the file from Ms. Mielke; and she provided him with access to the files in Dropbox.  Mr. Beckendorf began to examine the Honda Folders to determine what information had been exposed.[65]

In so doing, Mr. Beckendorf found that many files within the Honda Folders had timestamps noting that Defendant Parvizshahi had accessed and made edits to those files after he had left Arum Group, LLC and *throughout the time when he was working for Ro for Congress, Inc.*[66]

That same day (May 31, 2016), Mr. Beckendorf contacted Robert Eberhardt, Mike Honda for Honda's opposition researcher, to assist in assessing the nature of information that had been compromised.  For this purpose, Mr. Eberhardt was given access to the Honda Folders.[67]  Mr. Beckendorf also asked Vedant Patel, Communications Director to Mike Honda for Congress, to

---

[62]     Beckendorf Decl. ¶18 & Exh. 2.
[63]     Beckendorf Decl. ¶19 & Exh. 2.
[64]     Mielke Decl. ¶¶39, 40 & Exh. 2.
[65]     Beckendorf Decl. ¶21.
[66]     Beckendorf Decl. ¶22.
[67]     Beckendorf Decl. ¶23.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

assist in assessing the scope of the data breach.[68]

It became clear to Mike Honda to Congress that Defendant Parvizshahi had begun accessing confidential information belonging to Mike Honda for Congress after leaving Arum Group, and had continued accessing that information while working for Ro for Congress, Inc.[69]

After examining the Honda Folders, Mr. Beckendorf also discovered that a spreadsheet entitled "2012 2010 Crane Club Cycle Report.xls" *matched perfectly* with the donor document that had been anonymously provided to – and published by – San Jose *Inside* on Dec. 16, 2015.[70]

In response, Mr. Beckendorf promptly notified Rep. Honda that Defendant Parvizshahi had obtained access to the confidential, proprietary information of Mike Honda for Congress.[71] In addition, Mr. Beckendorf sent an email to his Campaign Team at 4:48 pm on May 31, 2016.  In that email, Mr. Beckendorf notified the following members of Mike Honda for Congress that Defendant Parvizshahi had obtained access to the campaign's sensitive donor information: Vedant Patel (Communications Director); Raghu Devaguptpu and Rachel Irwin (AL Media); Adnaan Muslim and Mara Kunin (Mission Control, Inc.); David Mermin (Lake Research Partners); Robert Eberhardt (Stanford Caskey); and Mike Nellis and MaryCate Brower (Revolution Messaging).[72]

In that email (at p.2), Mr. Beckendorf notified his Campaign Team that a significant amount of our campaign's confidential fundraising had been compromised:

> Rob[ert Eberhardt] is currently through all the information that was exposed to the Khanna campaign leading [up to] [20]15.
> Safe to say that had access to EVERYTHING last cycle.[73]

Shortly thereafter, Mr. Beckendorf received an email from Robert Eberhardt, Mike Honda for Congress' Opposition Researcher.  In that email, Mr. Eberhardt stated:  "Yeah, as Michael

---

[68]    Beckendorf Decl. ¶24.

[69]    Beckendorf Decl. ¶25.

[70]    Beckendorf Decl. ¶26.

[71]    Honda Decl. ¶¶17, 18.

[72]    Beckendorf Decl. ¶28.

[73]    Beckendorf Decl. ¶29 & Exh. 1 (capitalization in original).

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

[Beckendorf] said, it looks like *everything* related to Mike Honda's fundraising over the last years is in this folder that Brian [Parvizshahi] had access to."[74]  Among other things, Mr. Eberhardt stated that the Honda Folders contained personal contact information of the campaign's large-dollar and small-dollar donors.[75]

M.    The Donor Document Entitled "030514 MH contribution 2008-2014.xls"

As mentioned earlier, on Mar. 7, 2014 Defendant Parvizshahi "edited" and "added" a donor file entitled "030514 MH contribution 2008-2014.xls" (hereinafter, the "Donor Document"):[76]

The Donor Document contains detailed donor information from 2008 to 2014, including but not limited to:  date of donation, amount, contact name, employer, occupation, city and state of residence, email, phone numbers.[77]  As the first page of the document (at top left) shows, the Donor Document provides detailed information with respect to donations totaling to **$3,500,594.11.**[78]  In that regard, the Donor Document contained 9793 entries of confidential donor information, including that of the six supporters mentioned earlier:  Garnetta Annable, Judy Bertelsen, Kalyn Free, Fayzan Gowani, Bob Hasegawa, and Dale Minami.[79]

N.    The Harm Caused by the Data Breach and Defendant Khanna's Accosting of Mike Honda for Congress Supporters:  Assessment Costs

---

[74]    Italics added.

[75]    Beckendorf Decl. ¶31.

[76]    Eberhardt Decl. ¶23.

[77]    Eberhardt Decl. ¶25.

[78]    Eberhardt Decl. ¶26.

[79]    Eberhardt Decl. ¶¶24, 25, 29 (listing the pages of Eberhardt Decl. Exh. 1 where the names of the six supporters appear) & Exh. 1.

1    Mike Honda for Congress has suffered severe harm that was directly caused by the data

2    breach and Defendant Khanna's solicitation of our donors.  Among other things, Mike Honda for

3    Congress was forced to spend $5,109.36 in order to assess the extent to which the Honda Folders

4    had been compromised.[80]

5    Specifically, Mr. Beckendorf devoted 60 hours (at his hourly rate of $53.12) conducting

6    and compiling research, participating in conference calls, coordinating team strategy, and

7    reaching out to donors.  That amount totaled to $3,187.50.  Mike Honda for Congress' Opposition

8    Researcher Robert Eberhardt devoted 15 hours (at his hourly rate of $100) conducting and

9    compiling research and participating in conference calls.  That amount totaled to $1,500.00.

10   Mike Honda for Congress' Communications Director Vedant Patel devoted 15 hours (at his

11   hourly rate of $28.12) conducting and compiling research, participating in conference calls, and

12   developing press and communications strategy.  That amount totaled to $421.86.[81]

13   O.    The Harm Caused by the Data Breach and Defendant Khanna's Accosting of Mike

14         Honda for Congress Supporters:  Harm to Rep. Honda's Relationship with

15         Supporters

16   When it comes to fundraising, Rep. Honda abides by a simple rule:  As a matter of

17   respect, one should never solicit supporters of his or her opponent.[82]  Because it is costly to

18   campaign across a highly populated metropolitan area, it is critical for not only to convince

19   supporters to donate, but to encourage them to continue to donate up to the legally allowed

20   limit.[83]

21   The data breach into Mike Honda for Congress' confidential, proprietary information has

22   already irreparably harmed it in at least three serious ways.  *First*, its supporters were harassed

23   and intimidated, for Defendant Khanna accosted them at a place that they had least expected:

24

25

---

26   [80]    Beckendorf Decl. ¶33.

     [81]    Beckendorf Decl. ¶¶34-36.

27   [82]    Honda Decl. ¶13.

28   [83]    Beckendorf Decl. ¶9.

their email inbox.[84]  In response, some donors may have reduced – or stopped altogether – their financial support for Mike Honda for Congress.[85]

*Second*, the data breach into confidential, proprietary information has compromised Rep. Honda's relationships with supporters – which, in many cases, he has cultivated for years.[86] *Third*, the data breach personally embarrassed Rep. Honda and harmed his reputation.[87]  Not only were his supporters subjected to Mr. Khanna's attacks upon Rep. Honda, but the disclosure of confidential, proprietary information from the Honda Folders also resulted in adverse publicity for Rep. Honda.[88]

P.    Defendants Have Directly Benefited from Their Wrongdoing

Each Defendant has directly benefited from their wrongdoing.  Defendant Parvizshahi parlayed his illegal access to the Honda Folders into his current, well compensated position as Campaign Manager in a high-profile Congressional race.[89]  Defendant Ro for Congress, Inc. and Defendant Khanna used Honda for Congress' confidential, proprietary information not only to harass and intimidate Mike Honda for Congress supporters, but to harm Congressmember Honda's reputation and political standing.[90]

IV.    Legal Analysis:  Overview

Mike Honda for Congress must be granted a preliminary injunction, because its claims abundantly satisfy four essential requirements:  (1) it is likely to succeed on the merits, (2) without a preliminary injunction, is likely to suffer irreparable harm, (3) the balance of equities tips in its favor, and (4) an injunction "is in the public interest".[91]  The Ninth Circuit employs a sliding-scale analysis when examining a plaintiff's likelihood of success on the merits.  Namely,

---

[84]    Honda Decl. ¶¶15, 16.

[85]    Beckendorf Decl. ¶39.

[86]    Honda Decl. ¶20.

[87]    Honda Decl. ¶21.

[88]    Beckendorf Decl. ¶38.

[89]    Beckendorf Decl. ¶8 & Exh. 2.

[90]    Honda Decl. ¶21.

[91]    *Winter v. NRDC*, 129 S.Ct. 365, 374 (2008) (*quoted by Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (en banc).

1  a preliminary injunction is "appropriate" if (1) the balance of hardships tips "sharply" in the

2  plaintiff's favor, and (2) the plaintiff raises "*serious questions* going to the merits".[92]

3  **IV.    Mike Honda for Congress Is Likely To Succeed on the Merits**

4          Mike Honda for Congress is likely to succeed on the merits for two reasons.  *First*,

5  Defendant Parvizshahi and Defendant Ro for Congress, Inc. (as Defendant Parvizshahi's

6  employer) repeatedly violated three provisions of the CFAA:  18 U.S.C. §§1030(a)(2)(C) [theft of

7  computer data], 1030(a)(4) [unauthorized access with intent to defraud], and 1030(a)(5)

8  [unauthorized access resulting in damage to computer].  *Second*, all three Defendants

9  (Parvizshahi, Ro for Congress, Inc., and Khanna) violated 18 U.S.C. §1030(b), for they engaged

10 in a conspiracy to violate the provisions of Sections 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5).

11 **V.     Three Overlapping CFAA Issues**

12         We will first address three common overlapping issues under all three CFAA provisions:

13         A.     Defendant Ro for Congress, Inc. Is Vicariously Liable for Defendant Parvizshahi's

14                CFAA Violations

15         As a starting point, Defendant Ro for Congress, Inc. is vicariously liable for Defendant

16 Parvizshahi's CFAA violations.  "[C]ourts have held that an employer can be vicariously liable

17 for an employee's violations of the CFAA if those transgressions occur in the *scope of*

18 *employment* or the employer directs the employee's conduct."[93]

19         Here, as we have shown, Defendant Parvizshahi has been employed by Defendant Ro for

20 Congress, Inc. since January 2014.  During his employment with Defendant Ro for Congress,

21 Inc., Defendant Parvizshahi "added", "edited" or otherwise modified Mike Honda for Congress'

22 confidential, proprietary information on Dropbox *at least 44 times*.  In so doing, Defendant

23 Parvizshahi accessed confidential information from the Donor Document, and disseminated that

24 information to Defendants Ro for Congress, Inc. and Defendant Khanna.  As a direct result, Mike

25 Honda for Congress supporters such as Fayzan Gowani were accosted by Defendant Khanna over

26 _____

27 [92]     *Cottrell*, *supra*, 632 F.3d at 1134-35 (emphases added).

   [93]     *Netapp, Inc. v. Nimble Storage, Inc.*, 41 F.Supp.3d 816, 835 (N.D. Cal. 2014) (Koh, J.)
28 (italics added).

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

1    email.  Because Defendant Parvizshahi violated the CFAA in the scope of his employment, his

2    employer (Defendant Ro for Congress, Inc.) is vicariously liable under the CFAA.

3        B.    Plaintiff Satisfies the CFAA's "Without Authorization" or "Exceeding Authorized

4              Access" Requirement

5        Mike Honda for Congress satisfies CFAA Sections 1030(a)(2), 1030(a)(4), and

6    1030(a)(5)'s requirement that the perpetrator of the offense (a) had no "authorization" to access

7    the confidential data or (b) "exceeded his or her authorized access" when he or she accessed the

8    confidential data.  As this Court recently held in *NetApp v. Nimble Storage*, the CFAA flatly *bans*

9    a former employee from continuing to access his former employer's confidential information –

10   even if his or her access is inadvertently not withdrawn.[94]  The Court likened that situation to

11   where "a houseguest receives a key, is then told he is no longer welcome but keeps the key, and

12   the homeowner *neglects to change the lock*."[95]  Thus, if a former employer accesses such

13   information after his employment concludes, he or she has acted "without authorization" and

14   "exceed[ed] authorized access" as a matter of law.

15       The facts here exactly mirror those of *Netapp*.  After leaving Arum Group, Defendant

16   Parvizshahi's access to the Arum Group's Dropbox account was inadvertently not withdrawn.

17   Nevertheless, he continued to repeatedly access the Honda Folders on the Arum Group's

18   Dropbox account after leaving Arum Group and after becoming an employee of Defendant Ro for

19   Congress, Inc.  Accordingly, both Defendant Parvizshahi and his employer (Defendant Ro for

20   Congress, Inc.) acted "without authorization" and "exceed[ed] authorized access" when they

21   repeatedly accessed the confidential, proprietary information of Mike Honda for Congress.

22       C.    Plaintiff Satisfies the CFAA's Loss/Damage Requirement

23       Furthermore, Mike Honda for Congress satisfies the CFAA's loss/damage requirement.

---

24   [94]    *Netapp, supra*, 41 F.Supp.3d 816, 831-34 (N.D. Cal. 2014) (Koh, J.); *see also Weingand*
25   *v. Harland Financial Solutions, Inc.*, 2012 WL 2327660 (N.D. Cal. June 19, 2012).

26   [95]    *Netapp, supra*, 41 F.Supp.3d at 832 (italics added).  Plaintiff also satisfies the CFAA's
     "protected computer" requirement, for Defendant Parvizshahi accessed Arum Group's Dropbox
27   account by engaging in "conduct involv[ing] interstate or foreign communication":  namely,
     using the internet.  *See Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119
28   F.Supp.2d 1121, 1125 (W.D. Wash. 2000).

To bring a civil action under the CFAA, a plaintiff must show that the alleged violations caused "damage" or a "loss" of at least $5,000.[96]  *First*, Mike Honda for Congress satisfies CFAA's requirement with respect to "loss".

The CFAA defines loss as "any reasonable cost to any victim, including the *cost of responding* to an offense[.]"[97]  As the Fourth Circuit and this Court have held, the "cost of investigating and identifying the CFAA, including many hours of valuable time away from day-to-day responsibilities" qualifies as the cost of responding to a CFAA offense, provided that the response costs totaled to at least $5000.[98]

Here, as shown earlier, Mike Honda for Congress was forced to shift its Campaign Manager, Opposition Researcher, and Press Secretary to investigate and identify the CFAA violation:  namely, the data breach that was discovered on May 31, 2016.  Because the response costs for that effort totaled to $5,109.36, Mike Honda for Congress satisfies the CFAA's $5,000 "loss" requirement.

*Second*, Mike Honda for Congress satisfies CFAA's requirement with respect to "damage".  It is settled law that the misappropriation of trade secrets or confidential information suffices to establish the $5,000 jurisdictional threshold, for misappropriation impairs the integrity of such data or information.[99]

Here, it is beyond dispute that Defendant Parvizshahi misappropriated Mike Honda for Congress' confidential, proprietary information.  Specifically, Defendant Parvizshahi "added" a number of Dropbox files in the Honda Folders.  As shown earlier, Dropbox files labeled as "added" are the most interesting.  If the "added" file had existed *before* the "added" action was taken, it means that someone had removed the file to another location (e.g., his or her desktop) –

---

[96]     *E.g., A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) (*citing* 18 U.S.C. §1030(g) & (a)(5)(B)(i)).

[97]     18 U.S.C. §1030(e)(11).

[98]     *iParadigms*, *supra*, 562 F.3d at 646 (*citing with approval SuccessFactors, Inc. v. Softscape, Inc.*, 544 F.Supp.2d 975, 980-81 (N.D. Cal. 2008)).

[99]     *E.g., Four Seasons Hotel & Resorts BV v. Consorcio Barr, SA*, 267 F.Supp.2d 1268, 1324 (S.D. Fla. 2003); *Shurgard*, *supra*, 119 F.Supp.2d at 1126-27.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

1   and then *moved the file back* to the shared location within the Dropbox account.[100]

2          As shown earlier, Defendant Parvizshahi "added", "edited", or in some way modified

3   individual documents at least 44 times during his employment with Ro Khanna for Congress.

4   What is more, Defendant Parvizshahi disseminated the misappropriated information to Defendant

5   Khanna and Defendant Ro for Congress, Inc.  Indeed, one of the documents that had existed

6   *before* it was "added" by Defendant Parvizshahi – the Donor Document – contained the email

7   addresses of <u>all six</u> Honda for Congress declarants that Defendant Khanna had accosted by email:

8   Garnetta Annable, Judy Bertelsen, Kalyn Free, Fayzan Gowani, Bob Hasegawa, and Dale

9   Minami.  Because Defendant Parvizshahi misappropriated its confidential, proprietary

10  information, Mike Honda for Congress meet the CFAA's damage requirement as a matter of law.

11  **VI.    Defendants Parvizshahi and Ro for Congress, Inc. Violated CFAA Section**

12  **1030(a)(2)(C) [Theft of Computer Data]**

13         Defendant Parvizshahi and (through vicariously liability) Ro for Congress, Inc. violated

14  CFAA Section 1030(a)(2)(C), which bans the theft of computer data.  Under that provision,

15  "[w]hoever … intentionally accesses a computer without authorization or exceeds authorized

16  access, and thereby obtains … information from any protected computer if the conduct involved

17  an interstate or foreign communication … shall be punished".[101]

18         As shown above, Defendant Parvizshahi repeatedly accessed and misappropriated Mike

19  Honda for Congress' confidential, proprietary information after leaving Arum Group and joining

20  Defendant Ro for Congress, Inc.  Accordingly, both he and Ro for Congress, Inc. are liable under

21  Section 1030(a)(2)(C).

22  **VII.   Defendants Parvizshahi and Ro for Congress, Inc. Violated CFAA Section 1030(a)(4)**

23  **[Unauthorized Access with Intent to Defraud]**

24         In addition, Defendant Parvizshahi and (through vicariously liability) Ro for Congress,

25  Inc. violated CFAA Section 1030(a)(4), which bans accessing a computer with "intent to

26  defraud".  As this Court has made clear, "fraud" under the CFAA "only requires a showing of

---

[100]    O'Day Decl. ¶¶25-27.

[101]    *Shurgard*, *supra*, 119 F.Supp.2d at 1124.

unlawful access; there is *no need* to plead the elements of common law fraud[.]"[102]

As shown above, Defendant Parvizshahi unlawfully Mike Honda for Congress' confidential, proprietary information after leaving Arum Group and joining Defendant Ro for Congress, Inc.  Accordingly, both he and Ro for Congress, Inc. are liable under Section 1030(a)(4).

**VIII.  Defendants Parvizshahi and Ro for Congress, Inc. Violated CFAA Section 1030(a)(5) [Unauthorized Access Resulting in Damage to Computer]**

Defendants Parvizshahi and (through vicarious liability) Ro for Congress, Inc. also violated CFAA Section 1030(a)(5), which bans accessing a computer, without authorization, that results in "damage".[103]  As we have shown, Mike Honda for Congress can show that it suffered damage, for Defendant Parvizshahi misappropriated its confidential, proprietary information. Moreover, as we have shown, Defendant Parvizshahi accessed Arum Group's Dropbox account without authorization as a matter of law, for he accessed the Dropbox account *after* his employment with Arum Group had ended.  Therefore, Defendants Parvizshahi and Ro for Congress, Inc. violated CFAA Section 1030(a)(5).

**IX.  Defendants Parvizshahi, Ro for Congress, Inc., and Khanna Are Liable for Conspiracy [CFAA Section 1030(b)]**

Finally, Defendant Parvizshahi, Defendant Ro for Congress, Inc., and Defendant Khanna are liable for conspiracy under CFAA Section 1030(b).  To show a conspiracy under the CFAA, a plaintiff must show that "defendants reached some explicit or tacit understanding or agreement."[104]  Here, beginning approximately January 2014, Defendant Parvizshahi, Defendant Ro for Congress, Inc., and Defendant Khanna had an understanding, whereby (1) Defendant Parvizshahi obtained Mike Honda for Congress' confidential, proprietary information from the Arum Group's Dropbox account, and (2) all three Defendants used that information for their

---

[102]   *Netapp, supra*, 41 F.Supp.3d at 833 (italics added).

[103]   *Shurgard, supra*, 119 F.Supp.2d at 1126.

[104]   *Alfus v. Pyramid Tech. Corp.*, 745 F.Supp. 1511, 1521 (N.D. Cal. 1990) (*quoted by Netapp, supra*, 41 F.Supp.3d at 836).

benefit and to the detriment of Mike Honda for Congress, Inc.

Among other things, that collaboration between the Defendants enabled them to create what Defendant Khanna called a "friends list" – one that consists of supporters of Mike Honda for Congress.  In that regard, Defendant Khanna personally responded to inquiries from Mike Honda for Congress supporters regarding the "friends list"; and, as needed, directed Defendant Parvizshahi to remove certain Mike Honda for Congress supporters (like Fayzan Gowani) from the "friends list".  Because they had – and demonstrably acted on – an understanding to jointly engage in conduct that violated the CFAA, all Defendants are liable for conspiracy under Section 1030(b).

## X.   Mike Honda for Congress Continues to Suffer Irreparable Harm

Mike Honda for Congress has already suffered irreparable harm – and will continue to suffer irreparable harm – unless it is granted a preliminary injunction.  An injunction is called for if wrongdoing has harmed one's reputation or resulted in the loss of goodwill.[105]  The illegal data breach perpetrated by Defendants has already personally embarrassed Rep. Honda, compromised his relationship with supporters, and harmed his reputation.  Unless an injunction issues against them, Defendants will *continue* to use the information that they illegally obtained for their own benefit and to Rep. Honda's detriment.

## XI.   The Balance of Hardships Tips Sharply in Mike Honda for Congress' Favor

With the general election looming, the balance of hardships tips sharply in Mike Honda for Congress' favor.  "It is obvious that compliance with the law is in the public interest."[106] Unless an injunction is granted, Defendants will continue to reap political and economic benefits from violating the CFAA.  Therefore, there can be no question that the balance of hardships tips sharply in Mike Honda for Congress' favor.

## VII.   Plaintiffs Are Entitled to a Preliminary Injunction

This brief has painstakingly shown that Mike Honda for Congress is entitled to a

---

[105]   *E.g., YourNetDating , LLC v. Mitchell*, 88 F.Supp.2d 870 (N.D. Ill. 2000); *Southeastern Mechanical Svcs., Inc. v. Broday*, No. 08-CV-01151, 2008 BL 232599 (M.D. Fla. Oct. 15, 2008).

[106]   *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010).

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY INJUNCTION

preliminary injunction.  First, it is not just "likely", but certain that it will prevail on the merits.

Second, Mike Honda for Congress continues to suffer irreparable harm.  Finally, the balance of

hardships tip sharply in its favor – a critical circumstance to which the Ninth Circuit pays special

heed.[107]  Finally, the public will greatly benefit from injunctive relief, for Defendants will be

ordered to stop violating federal law.  For all these reasons, the Court must grant Mike Honda for

Congress swift, injunctive relief.

**VIII.    Conclusion**

Laws must be honored, not broken.  In light of Defendant Parvizshahi, Defendant Ro for

Congress, Inc., and Defendant Khanna's deliberate, repeated, and shameful wrongdoing, Mike

Honda for Congress respectfully asks the Court to swiftly grant all appropriate injunctive relief.

DATED:  Sept. 22, 2016

Respectfully submitted,

By:  /s/ Gautam Dutta

GAUTAM DUTTA, ESQ.

Attorneys for Plaintiff

MIKE HONDA FOR CONGRESS

---

[107]     *Cottrell*, *supra*, 632 F.3d at 1134-35 (emphases added).